**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION NO. 22-0173 |
| VERSUS | JUDGE ELIZABETH E. FOOTE |
| BRYAN ODELL RASCO | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

Before the Court is a motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) filed by Defendant Bryan Odell Rasco ("Rasco"). Record Document 48. Rasco argues his family circumstances and rehabilitation constitute extraordinary and compelling circumstances justifying a reduction of sentence. The Government opposes Rasco's motion and contends he is not entitled to relief. Record Document 55. For the following reasons, Rasco's motion [Record Document 48] is **DENIED**.[1]

## Background

On February 24, 2023, Rasco pleaded guilty to possession with intent to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B). Record Documents 1 & 31. With a total offense level of 31 and criminal history category of VI, Rasco's Guideline range was 188 to 235 months. Record Document 47 at 20. On June 29, 2023, the Court sentenced Rasco to 188 months imprisonment and five years of

---

[1] This memorandum ruling largely reproduces the memorandum ruling issued on May 8, 2025. Record Document 58. That ruling was subsequently vacated to cure a deficiency in the Government's service of its opposition to Rasco's motion, and to allow Rasco an opportunity to reply. Record Document 60. This ruling considers and incorporates the arguments made in Rasco's reply. However, Rasco's arguments do not change the Court's ultimate conclusion and Rasco's motion is **DENIED**.

supervised release. Record Document 45 at 2-3. Rasco's current projected release date is July 16, 2035.[2]

In the instant motion, Rasco argues his family circumstances justify a reduction of sentence. Rasco submits that his wife Naomi Ivory ("Ivory"), who is the primary caretaker of his two children with nonverbal autism, has been diagnosed with breast cancer. Record Document 48 at 1-5. Rasco argues that the need to provide care for his wife and for his two children, considered separately or together, is a qualifying family circumstance. *See id.* at 3-4. He further argues that his rehabilitation while incarcerated supports a reduction of sentence.[3] *See id.* at 2. Medical documents with information about his wife and children's diagnoses, and a marriage certificate, are attached to Rasco's motion. Record Document 48-2. On January 30, 2025, Rasco filed a supplemental memorandum in support of his motion. Record Document 56.

On May 8, 2025, the Court issued a memorandum ruling denying Rasco's motion. Record Document 58. Shortly thereafter, Rasco alerted the Court that he had not received a copy of the Government's opposition to his motion. Record Document 59. The Court

---

[2] *See Inmate Locator*, BOP, https://www.bop.gov/inmateloc.

[3] Rasco also briefly argues that under Amendment 821 to the United States Sentencing Guidelines ("Amendment 821"), he would have received a lower sentence. Record Document 48 at 7. To the extent that Rasco's argument can be characterized as a motion or other request for relief pursuant to 18 U.S.C. § 3582(c)(2) based on Amendment 821, any such request is meritless.

Under the amended provision, Rasco would only have received one (1) additional status point instead of two (2), for a total of thirteen criminal history points. *See* U.S.S.G. § 4A1.1(e); Record Document 47 at 13. With thirteen criminal history points, Rasco's criminal history would remain a category of VI. U.S.S.G. § 5A. Therefore, to the extent Rasco's seeks relief based on Amendment 821, any such request is **DENIED**.

found that the Government's service of its opposition was deficient. Record Document 60. The Court vacated its memorandum ruling and ordered that the Government properly serve a copy of its opposition to allow Rasco an opportunity to reply. *Id.* Rasco replied.[4] Record Document 62. Attached to his reply are additional medical records for his wife, Ivory, and a letter to the Court from Ivory. Record Documents 62-1 & 62-2.

## Law & Analysis

### I.   Exhaustion of Remedies

Historically, only the Director of the Bureau of Prisons ("BOP") could file a motion to reduce an inmate's sentence. *See* First Step Act of 2018, Pub. L. No. 115-391, § 603(b), 132 Stat. 5193, 5239. After the First Step Act of 2018, however, a court may consider compassionate release motions directly from prisoners. 18 U.S.C. § 3582(c)(1)(A). But before a prisoner pursues compassionate release through a district court, he must first exhaust all administrative remedies or wait for a lapse of thirty days from the time he files his request with the warden. *Id.* To comply with the administrative exhaustion requirement, a defendant must exhaust their remedies before filing their motion for compassionate release. *United States v. Franco*, 973 F.3d 465, 468 (5th Cir. 2020); *United States v. Gurley*, No. 17-CR-0071, 2020 WL 6343142, at *4 (E.D. La. Oct. 29, 2020) ("A

---

[4] Rasco's reply raises for the first time a 2025 amendment to the United States Sentencing Guidelines that provides a special instruction regarding mitigating role adjustments for low-level drug traffickers. Record Document 62 at 1. The Court will not consider arguments raised for the first time on reply nor grounds for compassionate release that were not first exhausted through a request to the warden of Rasco's facility. Further, even if the Court were to consider this argument, it would be meritless. Adjustments based on the defendant's role in an offense are not applicable unless two or more persons were involved in the offense. *See* U.S.S.G. § 3B1.2 cmt. 2. Rasco was the only participant indicted in this matter. Record Document 1.

defendant must exhaust administrative remedies before filing a motion in the district court seeking compassionate release pursuant to Section 3582(c)(1)(A).").

The administrative-exhaustion provision of 18 U.S.C. § 3582(c)(1)(A) is set out in mandatory terms. The district court can only modify a sentence after the defendant has exhausted administrative remedies. This mandatory language includes no exceptions, equitable or otherwise. *See Martinez-Guevara v. Garland*, 27 F.4th 353, 361 (5th Cir. 2022) ("Mandatory exhaustion regimes brook no exceptions.") (citing *Ross v. Blake*, 578 U.S. 632, 639 (2016)); *United States v. Alam*, 960 F.3d 831, 834 (6th Cir. 2020) ("Nothing in § 3582(c)(1)(A) suggests the possibility of judge-made exceptions."). Therefore, this Court should only consider Rasco's motion if he has satisfied the aforementioned exhaustion requirement.

Rasco has satisfied the claims processing requirement for his claims regarding his family circumstances and rehabilitation. Attached to Rasco's motion is a letter to the warden of his facility dated July 5, 2024, requesting compassionate release pursuant to § 3582 based on his wife's diagnosis and her need for a caretaker, his children's diagnoses and need for a caretaker, and his rehabilitation. Record Document 48-1 at 2. In a response letter dated July 12, 2024, the warden denied Rasco's request. *Id.* at 1. Therefore, Rasco has properly exhausted his administrative remedies and the Court may properly consider his motion.

## II.     Extraordinary and Compelling Circumstances

While a court generally "may not modify a term of imprisonment once it has been imposed," there are several exceptions. 18 U.S.C. § 3582(c). One exception allows a court

to reduce an inmate's sentence when the inmate provides "extraordinary and compelling reasons" to justify a sentence reduction.[5] 18 U.S.C. § 3582(c)(1)(A)(i). The inmate bears the burden of showing why a reduction is justified. *See United States v. Clark*, 451 F. Supp. 3d 651, 656 (M.D. La. 2020).

To assist district courts in determining what constitutes an extraordinary or compelling reason, the Sentencing Commission provides a blueprint that elucidates circumstances that may justify reducing a prison term. On November 1, 2023, the United States Sentencing Commission amended the Sentencing Guidelines to provide additional instruction concerning compassionate release. For the first time since the First Step Act was passed, the Commission outlined specific reasons that would be considered "extraordinary and compelling" under 18 U.S.C. § 3582(c)(1)(A)(i). The six categories now outlined in the Sentencing Guidelines are: (1) defendant's medical condition; (2) defendant's age; (3) family circumstances; (4) whether defendant has been a victim of abuse during custody; (5) other reasons; and (6) an extraordinarily long sentence. U.S.S.G. § 1B1.13(b).

Rasco alleges that several extraordinary and compelling circumstances exist justifying a reduction of sentence: his wife's incapacitation and need for a caretaker, his children's incapacitation and need for a caretaker, and his rehabilitation.

---

[5] To the extent Rasco requests the Court grant him relief by ordering that he be moved to home confinement, the Court does not have the authority to do so. *Cheek v. Warden of Fed. Med. Ctr.*, 835 F. App'x 737, 741 (5th Cir. 2020). "[R]elease to home confinement is a discretionary decision left to the Attorney General and the BOP" and courts cannot review the failure to release an inmate to home confinement. *Id.*

## A. Family Circumstances

Family circumstances can be extraordinary and compelling such that a reduction

of sentence is justified based on:

> (A) The death or incapacitation of the caregiver of the defendant's . . . child who is 18 years of age or older and incapable of self-care because of a mental or physical disability or a medical condition.

> (B) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

U.S.S.G. § 1B1.13(b)(3).

The BOP has previously defined "incapacitation" as a condition wherein an

individual has suffered:

> [A] serious injury, or a debilitating physical illness and the result of the injury or illness is that the [spouse or child] is completely disabled, meaning that the [spouse or child] cannot carry on any self-care and is totally confined to a bed or chair; or

> [A] severe cognitive deficit (e.g., Alzheimer's disease or traumatic brain injury that has severely affected the [spouse or child's] mental capacity or function), but may not be confined to a bed or chair.

*United States v. Lewis*, No. 14-CR-0148, 2024 WL 4827378, at *3 (E.D. La. Nov. 19,

2024) (applying this definition to determine if a defendant's parent was incapacitated)

(quoting *Compassionate Release/Reduction in Sentence: Procedures for Implementation

of 18 U.S.C. §§ 3582 and 4205(g)*, BOP (Jan. 17, 2019), https://www.bop.gov/policy/prog

stat/5050_050_EN.pdf). The Court finds this definition instructive for determining

whether an inmate's family member is incapacitated. For relief to be justified on this

ground, Rasco must establish both that his family member (either his wife or child(ren))

6

is incapacitated and that he is the only caretaker available to that family member. *See id.* at *2.

Rasco argues his wife is incapacitated based on her cancer diagnosis and provides medical documentation corroborating the diagnosis. Record Document 48-2 at 1-9. He argues his two adult children (one biological child and one stepchild) are incapacitated based on their diagnoses of nonverbal autism spectrum disorder and provides medical documentation corroborating their diagnoses. *Id.* at 12-13. Rasco submits that his children need regular monitoring and assistance with meal preparation, bathing, and many other tasks. Record Document 48 at 5.

Rasco argues that he is the only available caretaker for his wife and/or children because Ivory "does not have immediate family members, stable or physically able to assist with the autistic children while experiencing cancer trials." *Id.* at 3. He contends his own mother is elderly and unable to assist, one of his siblings lives out of town, and the other sibling has their own familial obligations that prevent them from being of assistance. *Id.* at 3-4.

In opposition, the Government primarily argues that the Court was aware of Ivory's health problems at the time of Rasco's sentencing and that Rasco has not provided any documentation of Ivory's diagnosis. Record Document 55 at 3. Rasco's Presentence Investigation Report ("PSR") addresses his family circumstances at the time of sentencing. Record Document 47 at 17. The PSR states that Rasco married Ivory in 2006 and they had two children together, both of whom are now adults. *Id.* Rasco also raised one of Ivory's children since the child was born in 2001 (Rasco's stepson). *Id.*; Record

Document 48-2 at 12. The PSR also states that Rasco's stepson and one of Rasco's biological sons have nonverbal autism spectrum disorder and were unemployed at the time the PSR was completed. Record Document 47 at 17.

However, Rasco's evidence suggests that the Court was not aware of the specific circumstances regarding Ivory's cancer diagnosis at the time of sentencing. One of the medical forms Rasco submits dated May 31, 2024, states that Ivory was "recently diagnosed with breast cancer," and it appears that physicians completed cancer staging on April 26, 2024. Record Document 48-2 at 5. Therefore, Ivory's cancer diagnosis constitutes a new fact the Court was not aware of at the time of Rasco's June 29, 2023, sentencing. Further, contrary to the Government's assertions, Rasco did provide medical documentation dated May 9, May 14, May 31, June 10, and June 18, 2024, detailing Ivory's condition and treatment plan. Record Document 48-1. Rasco provided additional documentation along with his reply brief, including updated medical records through April 2025, and a letter from Ivory discussing how her diagnosis has affected her. Record Documents 62-1 & 62-2.

It is possible that Rasco *may* have established family circumstances that are sufficiently extraordinary and compelling under the Sentencing Guidelines to justify a reduction of sentence. Breast cancer could render an individual incapacitated and in need of a caretaker. However, Rasco has not explained why Ivory's cancer diagnosis has incapacitated her, that is, he has not explained how it has interfered with her own self-care such that it rises to the level of incapacitation. Rasco and Ivory have both stated that Ivory's diagnosis leads to frequent hospital visits, causes stress, and interferes with

8

daily activities like grocery shopping. Record Documents 62 at 4 & 62-2 at 2. Ivory experiences soreness of her joints, headaches, hair loss, and a weakened immune system. Record Document 62 at 3.

The Court understands that Ivory's breast cancer diagnosis and treatment causes stress and headaches, and interferes with some of her daily activities. However, those interferences do not rise to the level of incapacitation that would justify a grant of compassionate release. Ivory is not unable to care for herself, is not confined to a bed or chair, and does not suffer any severe cognitive deficit. *See Lewis*, 2024 WL 4827378, at *3. Rasco's main discussion of his wife's needs involves her need for assistance caring for their children. *See, e.g.*, Record Document 48 at 3 ("His wife does not have immediate family members, stable or physically able to assist with the autistic children while experiencing the cancer trials."). Thus, he fails to meet his burden of establishing that Ivory is incapacitated and in need of a caretaker.

Nonverbal autism could render an individual incapacitated. This sort of diagnosis is precisely what the Advisory Comments to the 2024 Sentencing Guidelines contemplated when the Guidelines were revised to allow caretaking for nonminor children with disabilities. *See Amendment 814 - Reason for Amendment*, U.S. Sent'g Comm'n, https://www.ussc.gov/guidelines/amendment/814 ("This expansion reflects the Commission's determination that providing care for a non-minor child with severe caretaking needs presents a circumstance similar to providing care for a minor child, as some courts have recognized."). Rasco avers that his children need assistance with basic tasks and need around-the-clock care. He explains that because of Ivory's diagnosis, she

is no longer able to provide that care. *See* Record Document 48 at 3. Attached to his

motion is a form that appears to request around-the-clock care for his children through

a state program. *See* Record Document 48-2 at 12-13. However, in his reply brief, Rasco

explains that his children have not been provided with daily care assistance through the

state. Record Document 62 at 5. Instead, a "living wellness assessment state

Representative does visit monthly to 'check' on the well-being of the two autistic children."

*Id.*

Generally, the Court would be inclined to request further information regarding

Rasco's children's incapacitation and the availability of other caretaking options. However,

for a defendant to show that they are eligible for compassionate release, in addition to

finding that extraordinary and compelling circumstances exist warranting a reduction of

sentence, the Court must also determine whether the 18 U.S.C. § 3553(a) sentencing

factors weigh in favor of a reduction. As explained below, the Court finds that even if

Rasco's family circumstances are extraordinary and compelling, the Court would and

hereby does deny any reduction of sentence based on the § 3553(a) factors.

### B. Rehabilitation

"[R]ehabilitation of the defendant is not, by itself, an extraordinary and compelling

reason" for the purposes of compassionate release. U.S.S.G. § 1B1.13(d) (pursuant to 28

U.S.C. § 994(t)); *United States v. Grimaldo*, No. 08-CR-0107, 2022 WL 4126106, at *7

(E.D. Tex. Sept. 9, 2022) ("Although [defendant]'s behavior while incarcerated is

commendable, it does not constitute an extraordinary and compelling reason for a

sentence reduction.") However, rehabilitation "may be considered in combination with

other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted." U.S.S.G. § 1B1.13(d).

Rasco submits that he has made "extraordinary efforts to rehabilitate while incarcerated." Record Document 48 at 2. Rasco has participated in several educational classes and re-entry programs including Academic Success, Anger Management, Public Speaking, Personal Finances, Resume Writing, and GED classes, among several others. *Id.* at 7. The Court commends Rasco for his efforts. The Court notes, however, that it can only consider evidence of such rehabilitation alongside his claims based on family circumstances.

## III.   18 U.S.C. § 3553(a) Factors

"[C]ompassionate release is discretionary, not mandatory, and could be refused after weighing the sentencing factors of 18 U.S.C. § 3553(a)." *United States v. Chambliss*, 948 F.3d 691, 693 (5th Cir. 2020); *see also United States v. Shkambi*, 993 F.3d 388, 392 (5th Cir. 2021) (explaining that a defendant arguing for compassionate release must "convince the district judge to exercise discretion to grant the motion after considering the § 3553(a) factors"). Therefore, before granting relief under § 3582(c)(1)(A), the Court must consider the factors enumerated in § 3553(a) to the extent they are applicable. *See* 18 U.S.C. § 3582(c)(1)(A). The 18 U.S.C. § 3553(a) factors include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed--
>    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>    (B) to afford adequate deterrence to criminal conduct;
>    (C) to protect the public from further crimes of the defendant; and

11

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for--

(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . .

(5) any pertinent policy statement--

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). Upon careful consideration, the Court finds the factors weigh against a reduction of sentence.

As the Government highlights in its opposition, Rasco's criminal history includes convictions for possession with intent to distribute a schedule II controlled dangerous substance ("CDS"), two convictions for possession of a schedule II CDS, battery of a police officer-injury requiring medical attention, and three convictions for domestic abuse. Record Document 47 at 9-12. Rasco's current crime of conviction is another drug-related offense: possession with intent to distribute methamphetamine, which was committed while Rasco was serving a term of parole for his offense of possession with intent to distribute a schedule II CDS. *Id.* at 1, 13. Several of Rasco's previous convictions involve violence against law enforcement officers, his wife Ivory (whose diagnosis is largely the basis for his motion for compassionate release), and another woman who is the mother of one of Rasco's other children. *Id.* at 10-12.[6]

---

[6] Rasco argues that the § 3553(a) factors do not weigh against a reduction of sentence. Specifically, he argues that he accepted responsibility for his role in the instant offense, that the seriousness of his criminal history was overstated in the Government's opposition, and that his criminal history was largely explained by his substance abuse. Record Document 62 at 6-7. The Court notes that these factors were all accounted for in

The Court sentenced Rasco at the bottom of his Guidelines range to 188 months imprisonment. Record Documents 47 at 20 & 45 at 2-3. Rasco has been in federal custody since August 15, 2022, and thus has served approximately 35 months[7]—less than one-fifth—of his 188-month sentence. *See* Record Document 45 at 2. "Defendants who have not served a substantial portion of their sentences are not favored candidates for compassionate release." *United States v. Williams*, No. 06-CR-10017, 2023 WL 5978219, at *5 (W.D. La. Aug. 22, 2023), *report and recommendation adopted*, 2023 WL 5969625 (W.D. La. Sept. 12, 2023).

Upon renewed consideration of the § 3553(a) factors, the Court again finds that Rasco's 188-month sentence is necessary based on the nature and circumstances of Rasco's offense, Rasco's criminal history, and to reflect the seriousness of the offense, promote respect for the law, to provide just punishment for the offense, and to afford adequate deterrence to criminal conduct. *See* 18 U.S.C. § 3553(a)(1)-(2). A reduction of sentence would fail to accomplish these objectives.

---

Rasco's initial sentencing. Rasco received a three-point reduction in his offense level for acceptance of responsibility. Record Document 47 at 8. In sentencing Rasco, the Court considered Rasco's mental health issues and substance abuse, along with his "long history of violence" and drug dealing. *See* Record Document 46 at 5. As explained above, while the Court commends Rasco for his efforts to rehabilitate himself while incarcerated, the Court finds that the 188-month sentence imposed remains the most appropriate in light of the § 3553(a) factors.

[7] This calculation includes time served in federal custody before Rasco's sentencing.

## Conclusion

For the reasons assigned here, Rasco's motion for compassionate release pursuant

to 18 U.S.C. § 3582(c)(1)(A) [Record Document 48] is **DENIED**.

**THUS DONE AND SIGNED** this ~~17~~th 18th day of July, 2025.

_____
ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE